**Dated: October 3, 2016**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Elena Marie Capuccio, | ) | Case No. 16-10604-JDL |
| | ) | Ch. 13 |
| Debtor. | ) | |
| | ) | |
| Anthony Capuccio, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. No. 16-1053-JDL |
| v. | ) | |
| | ) | |
| Elena Marie Capuccio, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER DENYING MOTION TO QUASH

Before the Court is the *Defendant's Amended Motion to Quash* (the "*Motion*") [Doc.17] a Subpoena Duces Tecum issued by the Plaintiff to the Fort Sill Federal Credit Union (the "Credit Union"), a non-party in this adversary proceeding. Plaintiff has timely responded to the *Motion (*the *"Response"*) [Doc.18].

Plaintiff issued a subpoena duces tecum to the Credit Union, seeking to obtain "monthly statements, negotiated checks, duplicate deposit receipts for all accounts of Elena Marie Capuccio (Defendant) for the period 2006 - July, 2014". [Doc.18-7]. Defendant contends that the subpoena should be quashed on the basis that it seeks personal and confidential information, violates the Defendant's expectation of privacy, encompasses too broad a time period and constitutes a "classic fishing expedition" into irrelevant matters. Defendant's *Motion* asks the Court to quash the subpoena in its entirety or, in the alternative, enter a protective order limiting its scope.

## I. Background

Plaintiff brings this adversary proceeding as the state court appointed guardian of his and the Defendant's incompetent Mother, Anna Marie Capuccio ("Mother"), seeking to have Defendant's obligation to the guardianship estate determined non-dischargeable under 11 U.S.C. §§523(a)(2) and (a)(4). Plaintiff alleges that from 2004 to 2014 Defendant misappropriated in excess of $300,000.00 of Mother's funds to the Defendant's own use and benefit while she was Mother's principal care giver and the sole manager of Mother's finances prior to Plaintiff being appointed guardian. Defendant admits that she was Mother's principal care giver for several years, generally denies Plaintiff's allegations of wrongdoing, and asserts that after January 9, 2009, she was acting on her Mother's behalf under a Durable Power of Attorney. Defendant has filed a Counterclaim seeking recovery of $105,000.00 from the guardianship estate for the uncompensated services she rendered to her Mother based on quantum meruit.

On July 27, 2016, the Plaintiff issued a subpoena to the Credit Union for the production of the above described bank account documents. The Affidavit of the Plaintiff attached to Plaintiff's *Response* states that Mother maintained a checking account at Liberty National Bank and a savings account at the Credit Union. [Doc.18-6]. The subpoena seeks the discovery of information from all accounts in the name of the Defendant at the Credit Union. The Credit Union has not produced records in response to the subpoena nor has it filed an objection to the subpoena.

## II. Applicable Law

As an initial matter, the Court must consider whether Defendant has standing to move to quash or otherwise modify the Credit Union subpoena even though the Plaintiff has not raised the standing issue.[1] As a general rule, a party to a lawsuit does not have standing to object to a subpoena issued to a third party. See e.g., *Shirazi v. Childtime Learning Center, Inc.*, 2008 WL 4792694 (W.D. Okla. 2008) (unpublished opinion); *Transcor, Inc., v. Furney Charters, Inc.*, 212 F.R.D. 588, 590 (D. Kan. 2003); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979). An exception to the general rule occurs where the challenging party asserts that a "personal right or privilege with respect to the material subpoenaed" exists. *Shirazi,* 2008 WL 4792694; *Brown,* 595 F.2d at 967.

"Although the Tenth Circuit has not expressly addressed the question whether bank records trigger the requisite personal right, courts have held that individuals whose banking records are subpoenaed 'have a privacy interest in their personal financial affairs that gives

---

[1] *Herff Jones, Inc. v. Oklahoma Graduate Services, Inc.*, 2007 WL 2344705, n. 4 (W.D. Okla. 2007) (unpublished opinion); *Public Service Co. of Oklahoma v. A Plus, Inc.*, 2011 WL 691204 (W.D. Okla. 2011) (unpublished opinion); *Hood v. Fiberweb, Inc.*, 2010 WL 4102219 (M.D. Tenn. 2010) (unpublished opinion).

them standing to move to quash a subpoena served on a non-party financial institution'".
*Fullbright v. State Farm Mutual Automobile Insurance Co.*, 2010 WL 273690 (W.D. Okla. 2010) (unpublished) (citing *Arias-Zeballos v. Tan*, 2007 WL 210112 (S.D.N.Y. 2007) (unpublished opinion); *Catskill Development, LLC v. Park Place Entertainment,* 206 F.R.D. 78, 93 (S.D. N.Y.2002). Accordingly, the Court concludes that Defendant has standing to challenge the subpoena at issue to the Credit Union.

The fact that Defendant's right of privacy gives her standing to challenge the subpoena doesn't mean there are sufficient grounds to successfully do so. In support of her *Motion*, Defendant relies upon Fed. R.Civ. P 45(d)(3)(A)[2] (the "Rule") which identifies circumstances in which a court is *required* to grant a motion to quash or modify the subpoena. The Rule provides, in pertinent part, as follows:

> (A)  *When required.*  On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> 
>   (i)  fails to allow a reasonable time to comply;
> 
>   (ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);
> 
>   (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> 
>   (iv) subjects a person to undue burden.

The Defendant does not assert that the subpoena did not allow reasonable time to comply or that it required compliance beyond the 100 mile geographical limits of Rule 45(c)(2). Neither does the *Motion* clearly assert that the subpoena seeks "privileged or other protected matter". Even if it did assert such a privilege, no such privilege exists.

---

[2] In her *Motion*, Defendant cites Rule 45(c)(3). Plaintiff does the same in his Response. By amendments enacted in 2013, Rule 45(c) was renumbered as Rule 45(d).

Federal Rules of Evidence 1101 provides that the rule of evidentiary privilege of the FRE applies to all stages of proceedings before bankruptcy judges.[3] Under the FRE, "evidentiary privileges in federal question cases are governed by federal common law". *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625 (1989). Courts have uniformly held that the "banker-depositor privilege was not recognized at common law" and "does not exist in the Federal Courts". *United States v. Prevatt*, 526 F.2d 400, 402 (5th Cir. 1976); *Harris v. United States*, 413 F.2d 316, 319 (9th Cir. 1969); *Reiserer v. United States*, 479 F.3d 1160, 1165 (9th Cir. 2007) (under Federal common Law, "[i]t is well settled that there is no privilege between a bank and its depositor"). S*ee also*, *Sneirson v. Chemical Bank*, 108 F.R.D. 159, 162 (D. Del. 1985) (holding that a claim of privilege to bank records "pursuant to federal public policy was without merit"). Therefore, even assuming state law creates "a right of privacy in financial records, such state right or privilege does not preclude discovery" of bank records "in a federal court suit"*. Sneirson*, 108 F.R.D. at 162.

The last of the four potential mandatory grounds for quashing a subpoena under Rule 45(d)(3)(A) is that the subpoena issued to a nonparty subjects the *nonparty* to an undue burden or expense. Rule 45(d) is titled "Protecting a Person Subject to a Subpoena". Subsection (d)(1) provides that the "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing *undue burden or expense on a person subject to the subpoena*". (Emphasis added). Both the title of the Rule and the content is evidence that the primary purpose of Rule 45(d) is to protect the

---

[3] FRE 1101(a) provides that "These rules apply ... to United States bankruptcy judges and United States magistrate judges,... (b) in the cases and proceedings, including bankruptcy...". FRE 1101(c) sets forth that "The rules on privilege apply to all stages of a case or proceeding".

5

person subject to the subpoena. *CineTel Films, Inc. v. Does* 1-1, 052, 853 F. Supp. 2d 545, 556 (D. Md. 2012) ("the undue burden contemplated by Rule 45 is one placed on the direct recipient of the subpoena... not on third parties such as the defendants"); *In re Rhodes Companies, LLC,* 475 B.R. 733 739-40 (D. Nev. 2012). The subpoena here is issued to the nonparty Credit Union, and it has not objected to the subpoena. The Defendant faces no obligation to produce any information under the subpoena issued to the Credit Union and cannot claim any hardship, let alone "undue" hardship. See, *Call of the Wild Movie v. Smith*, 274 F.R.D. 334, 338 (D. DC. 2011).

Defendant's real basis for her *Motion* seems to be that the subpoena should be quashed because the Plaintiff is simply engaged in a "fishing expedition" and the records sought by the subpoena are "incompetent, irrelevant and immaterial" to the issues at hand. Rule 45 does not include relevance as an enumerated reason for quashing a subpoena. It is well settled, however, that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b)[4] and Rule 34.

Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003); *Oppenheimer Fund, Inc. v. Sanders* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978). A request for discovery should be allowed "unless it is clear that the information sought can

---

[4] Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action,...the parties' access to relevant information,...the importance of the discovery in resolving the issues ... . Information within this scope of discovery need not be admissible in evidence to be discoverable".

6

have no possible bearing" on the claim or defense of a party. *Transcor, Inc*. 212 F.R.D. at 591.

When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26(b)(1), or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor broad disclosure. *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 211-212 (D. Kan. 2002). The objecting party must specifically detail the reasons why each request is irrelevant and may not rely on boilerplate, generalized, conclusory, or speculative arguments. *E.E.O.C. V. Caesars Entertainment, Inc*., 237 F. R. D. 428, 432 (D. Nev. 2006). With the exception of the statute of limitations (as discussed below) making, in part, the information sought by the subpoena irrelevant, the Defendant has not stated specific reasons why the subpoenaed material is irrelevant.

Plaintiff has alleged that Defendant misappropriated hundreds of thousands of dollars from the Mother's accounts. At the 341 examination Debtor testified that she "couldn't recall" if she deposited $5,000.00 from her Mother's account into her account in December 2011. [Doc. 18-4]. Defendant further testified that in 2009 she transferred $36,000.00 from Mother's account to her account. [Doc.18-5]. The Plaintiff's Affidavit attached to his *Response* states that in Plaintiff's opinion a review of his Mother's checking account at Liberty National Bank for the period of 2004-2014 indicates that $155,285.98 of Mother's funds was misappropriated by Defendant. The Defendant's bank records are

7

clearly relevant to the Plaintiff's investigation of the possible misappropriation of funds from her Mother's account. If Defendant did misappropriate funds, it is not unreasonable to hypothesize that she may have deposited those funds in her account (indeed, Defendant has admitted such deposits). "Once a person's connection to apparently illicit conduct has been shown, it is relevant to know whether that person's bank account contains evidence of such conduct." *Lynch v. U.S. Department of Housing and Urban Development*, 2009 WL 4827049 (D. Kan. 2009). In sum, the bank records are clearly relevant, or at the very least could lead to relevant evidence.

The one basis of relevancy that the Defendant does articulate is that the subpoena seeks records going back eight years prior to the time that the Plaintiff was appointed guardian of the Mother's estate, covering the time period 2006-July 2014. Defendant asserts that "[e]ven making the tenuous assumption that the claims made by (the Plaintiff) are valid claims...the statute of limitations for such claims is at best three years". [Doc. 16, pg.2]. Thus, argues Defendant, any documents sought before 2011 are irrelevant. Defendant has also raised the statute of limitations as an affirmative defense.

This is an action sounding in the nature of fraud, and "'discovery' in respect to statutes of limitations for fraud has long been understood to include discoveries a reasonably diligent plaintiff would make". *Merck & Co. v. Reynolds* 559 U.S. 633,130 S.Ct. 1784 (2010); *Holmberg v. Armbrect*, 327 U.S. 392, 397, 66 S.Ct. 582 (1946) ("Where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered...".); *Woods v. Prestwick House, Inc.*, 2011 OK 9, 247 P.3d 1183; *Samuel*

*Roberts Noble Foundation, Inc. v. Vick*, 1992 OK 140, 840 P.2d 619. The "discovery rule" is also applicable to breaches of fiduciary duty. *Smith v. Baptist Foundation of Oklahoma*, 2002 OK 57 ¶ ¶ 7-8, 50 P.3d 1132. The issue of when the Mother discovered or should have discovered any alleged misappropriation of fraud presents a question for the trier of fact. *Barrington v. Hembree*, 143 P.2d 614, 616 (1943) ("[T]he question of whether an action is barred by the statute limitations in any particular case is one of fact where the facts are in dispute."). Not knowing when the Defendant's alleged misdeeds should have been discovered, this Court cannot say at this time when the applicable statute limitations began to run or expired.

For statute of limitations purposes, perhaps more important than the potential application of the "discovery rule" is Mother's medical condition. Mother's incapacity due to dementia was apparently diagnosed as early as December 2005. [Affidavit of Dr. Pamela Barry-Dugrid, Doc. 18-3]. Arguably, from at least that time forward the statute of limitations on Mother's right to bring an action against Defendant would have been tolled by virtue of her incapacity. Defendant points to the three year applicable statute of limitations to actions upon a contract express or implied not in writing pursuant to 12 O.S. 95(A)(2). Defendant, however, fails to take notice of 12 O.S. §96 relating to the statute of limitations applicable to "persons under disability" which provides, in pertinent part:

> If a person entitled to bring an action other than for the recovery of real property, except for a penalty or forfeiture, be, at the time the cause of action accrued, under any legal disability, every such person shall be entitled to bring such

9


> action within one (1) year after such disability shall be removed ....[5]

In *Freeman v. Alex Brown & Sons, Inc.*, 73 F.3d 279, 282 (10th Cir.1996), the Tenth Circuit interpreted 12 O.S. §96 as follows:

> Of particular importance to our disposition of this case is the fact that the tolling statute preserves a legally-disabled person's cause of action regardless of whether he is represented by a guardian who might otherwise bring the action within the normal limitation period. Accordingly, the Oklahoma Supreme Court held in *Ischomer v. Fryer* that not only may a guardian bring an action on behalf of his ward during the entire period of the ward's disability,...but the ward may also bring the action after the disability is removed. (quote from *Ischomer v. Fryar*, 231 P. 298, 299 (Okla. 1924) omitted.
>
> The Oklahoma Supreme Court reiterated this understanding of the statute more recently, in *Hamilton By and Through Hamilton v. Vaden*:
>
> The general rule is that after a guardian ad litem has been appointed for a minor, the guardian has the right, but not the obligation, to sue within the prescribed period of limitation. The guardian's failure to bring suit, or the discontinuation of a suit within the statutory period does not prejudice the minor's rights. The action is not barred by the two-year limitation until one year after the disability of infancy has been removed. 721 P.2d 412, 416 (Okla.1986) (citations omitted). Thus, §96 does more than merely delay the running of the relevant statute of limitation for a specific period of time. It indefinitely suspends the statute of limitation and preserves the legally-disabled person's claim until one year after the disability is removed. This understanding of §96 squares with the Oklahoma Supreme Court's 'long-standing recognition that the statutory rights of minors and incompetents are to be jealously guarded'. *Sooner Fed. Sav. & Loan Ass'n v. Smoot,* 894 P.2d 1082, 1090 (Okla.1995). This Court has construed §96 on one prior

---

[5] [A] person may be under the legal disability of insanity, or unsoundness of mind, within the meaning of the exception to the statute of limitations, when the disability is of such a nature as to show him unable to manage his business affairs or estate, or to comprehend his legal rights or liabilities." *Roberts v. Stith,* 1963 OK 74, 383 P.2d 14,18 (citing 9 A.L.R.2d 964).

>occasion, in *Walker v. Pacific Basin Trading Co.*, 536 F.2d 344 (10th Cir. 1976). In keeping with earlier holdings of the Oklahoma Supreme Court, we refused to narrow the scope of §96. We rejected the view that the provision excepts a legally-disabled individual who nonetheless proves himself capable of bringing legal claims within the normal limitation period by doing so through his legal guardian. *Id* at 346-347. The only exceptions to the privileges afforded by §96 are those enumerated within the statute itself. Accordingly, we reject Brown's argument that Freeman is barred from bringing the legal claims asserted in the present case because Richards, his predecessor as guardian, could have brought the same claims within the normal limitation period. The claims remain alive until one year after Stone's disability is removed.

In the present case, Mother's disability was not "removed" with the appointment of the Plaintiff as her guardian. This is consistent with the general rule that the appointment of a guardian for a mentally incompetent person does not have the effect of starting the running of the period of limitation tolled by virtue of the disability of mental incompetency. *Mason v. Ford Motor Co.*, 755 F.2d 120, 121 (8th Cir. 1985); *O'Brien v. Massachusetts Bay Transportation Authority,* 541 N.E.2d 334, 337 (Mass.1989) ("[I]t is plain that the disabilities to which the Legislature is referring are the disabilities of minority or mental incapacity themselves, not the disability to bring suit".) "Unlike some other states, the Oklahoma tolling provisions does not contain language that triggers the statute of limitations on an incapacitated person when a legal representative is appointed for that individual." *Desert State Life Management Servs. v. Association of Retarded Citizens of Albuquerque*, 939 F. Supp. 835, n. 3 (D. N M. 1996) (citing *Freeman*);[6] *Walker v. Pacific Basin Trading Co.*, 536

---

[6] For example, compare Oklahoma §96 with such statutes of limitations pertaining to the appointment of a guardian for persons under a mental incapacity such as Colorado C.R.S §13-81-103 (1)(a) providing, in pertinent part that:
>*[I]f a legal representative is appointed for a person under disability at any time after the right [of action] accrues prior to the termination of such disability, the applicable statute of limitation*

F.2d 344, 347 (10th Cir. 1976).  Under Oklahoma law, the Plaintiff bears the burden of proof showing the Mother's disability for purposes of the tolling of the statute of limitations. *Gilyard v. Gibson,* 612 Fed.Appx. 486, 487-88 (10th Cir. 2015).  Subject to the evidence developed at trial as to Mother's mental condition, the statute of limitations against Defendant for any wrongdoing may well have been tolled from 2005-2006 to the present time.  The subpoena seeks bank records from 2006 to 2014.  The Court does not find that the time period covered by such requested documents is either irrelevant or unreasonable.  Accordingly,

  **IT IS ORDERED** that the Defendant's *Amended Motion to Quash* [Doc 17] is **Denied.**

<div style="text-align:center">###</div>

---

> *shall run against such person under disability in the same manner, for the same period, and with the same effect as it runs against persons not under disability*. Such legal representative...in any event shall be allowed not less than two years after his appointment within which to take action on behalf of such person under disability, even though the two-year period expires after the expiration of the period fixed by the applicable statute of limitations. (Emphasis added).